**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ASARCO LLC, a limited liability corporation,<br>*Petitioner-Appellant*,<br><br>v.<br><br>UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, on behalf of itself and the other unions representing ASARCO LLC's bargaining unit employees,<br>*Respondent-Appellee.* | No. 16-16363<br><br>D.C. No.<br>2:15-cv-00117-SMM<br><br><br>ORDER AND OPINION |

Appeal from the United States District Court
for the District of Arizona
Stephen M. McNamee, Senior District Judge, Presiding

Argued and Submitted November 16, 2017
Pasadena, California

Filed December 4, 2018

Before:  Richard A. Paez and Sandra S. Ikuta, Circuit
Judges, and Robert W. Gettleman,* District Judge.

Order;
Opinion by Judge Gettleman;
Dissent by Judge Ikuta

## SUMMARY**

### Labor Law

The panel filed (1) an order withdrawing its opinion and dissenting opinion and denying as moot a petition for rehearing en banc, and (2) a new opinion and new dissenting opinion.

In its new opinion, the panel affirmed the district court's order affirming an arbitration award in favor of a union, which sought relief concerning a bonus provision in the parties' collective bargaining agreement.

The employer asserted that the arbitrator reformed the collective bargaining agreement in contravention of a no-add provision in the agreement. The district court held that the arbitrator was authorized to reform the agreement, despite the no-add provision, based on a finding of mutual mistake.

---

* The Honorable Robert W. Gettleman, United States District Judge for the Northern District of Illinois, sitting by designation.

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the arbitration award drew its essence from the collective bargaining agreement, and the arbitrator did not exceed his authority in reforming the agreement. In addition, the arbitrator's award did not violate public policy.

Dissenting, Judge Ikuta wrote that, in light of the no-add provision, the arbitrator exceeded his authority under the collective bargaining agreement.

## COUNSEL

Rex S. Heinke (argued), Akin Gump Strauss Hauer & Feld LLP, Los Angeles, California; Lacy Lawrence and Marty L. Brimmage, Akin Gump Strauss Hauer & Feld LLP, Dallas, Texas; for Petitioner-Appellant.

Michael D. Weiner (argued) and Jay Smith, Gilbert & Sackman, Los Angeles, California; Daniel M. Kovalik, United Steelworkers, Pittsburgh, Pennsylvania; Gerald Barrett, Ward Keenan & Barrett P.C., Phoenix, Arizona; for Respondent-Appellee.

**ORDER**

The opinion and dissenting opinion filed June 19, 2018, and appearing at 893 F.3d 621 (9th Cir. 2018), are withdrawn. They may not be cited by or to this court or any district court of the Ninth Circuit.

A new opinion is filed simultaneously with the filing of this order, along with a new dissenting opinion. Accordingly, the Appellant's petition for rehearing en banc is **DENIED** as moot. The parties may file petitions for rehearing and petitions for rehearing en banc in response to the new opinion, as allowed by the Federal Rules of Appellate Procedure.

---

**OPINION**

GETTLEMAN, District Judge:

This appeal involves the validity of an arbitration award. ASARCO asserts that the award is invalid because the arbitrator reformed the Basic Labor Agreement ("BLA") between the Union and ASARCO in contravention of a no-add provision in that agreement. The Union argues that the arbitrator did not contravene the no-add provision because he was required to reform the BLA upon finding that the parties were mutually mistaken as to its terms when they agreed to it. The district court affirmed the award, holding that ASARCO properly preserved its objection to the arbitrator's jurisdiction, but the arbitrator was authorized to reform the BLA, despite the no-add provision, based on a finding of mutual mistake. We affirm.

I.        BACKGROUND AND PROCEDURAL HISTORY

ASARCO is a miner, smelter, and refiner of copper and other precious metals with facilities in Arizona and Texas. ASARCO's employees are represented by the Union. ASARCO and the Union are parties to the BLA, which was originally effective January 1, 2007, through June 30, 2010. The BLA was modified and extended through two Memoranda of Agreement ("MOA") negotiated in 2010 and 2011.  Article 9, Section B of the BLA provides that a Copper Price Bonus ("Bonus") will be paid quarterly to employees who participate in ASARCO's pension plan.  The Bonus is calculated based on the price of copper and is significant, at times as much as $8,000 annually per employee.  The 2011 MOA modified Article 12, Section Q of the BLA to make employees hired on or after July 1, 2011 ineligible for ASARCO's pension plan, and thus ineligible for the Bonus.  The Union, unaware of the link between the pension plan and the Bonus,[1] filed a grievance disputing ASARCO's refusal to pay the Bonus to employees hired after July 1, 2011.  The case proceeded to arbitration.[2]

At the beginning of the arbitration hearing the parties stipulated that the matter was properly before the arbitrator and that the arbitrator had jurisdiction to decide the grievance.  The Union claimed there was a mutual mistake in the 2011 MOA: the parties failed to recognize that Article

---

[1] It is undisputed that the parties did not discuss the Bonus when negotiating the 2011 MOA, and neither party indicated that the Bonus would be impacted in any way by the modification.

[2] Article 5, Section 1 of the BLA provides that all disputes between the parties as to "the interpretation or application of, or compliance with the provisions . . ." of the BLA or MOAs are to be resolved through a grievance procedure that culminates in arbitration.

9, Section C of the BLA tied eligibility for the Bonus to participation in the pension plan, and both parties intended for all employees to remain eligible for the Bonus when they negotiated the 2011 MOA. Accordingly, the Union argued that reformation of the BLA was the appropriate remedy. ASARCO offered no evidence to the contrary, but argued that the arbitrator lacked authority to reform the BLA because Article 5, Section I(6)(c) contained the following no-add provision: "The arbitrator shall not have jurisdiction or authority to add to, detract from or alter in any way the provisions of this Agreement." After hearing six days of evidence the arbitrator concluded that neither party anticipated that the 2011 MOA modification would impact new hires' eligibility for the Bonus. Because he found that the parties were mutually mistaken as to the terms of the 2011 MOA, the arbitrator ordered that the BLA be reformed to provide that new hires, though ineligible for ASARCO's pension plan, remain eligible for the Bonus.

ASARCO filed a Petition to Vacate Arbitration Award in the United States District Court for the District of Arizona. ASARCO did not challenge the arbitrator's findings of fact or conclusions of law, but argued that the no-add provision deprived the arbitrator of authority to reform the BLA. The district court confirmed the arbitration award, but rejected the Union's argument that ASARCO had waived any argument regarding the limits of the arbitrator's jurisdiction. In confirming the award, the district court noted the degree of deference due to the arbitrator's decision and concluded that the arbitrator did not violate the no-add provision because the reformation corrected a defect in the BLA, which was the product of mutual mistake, to reflect the terms the parties had agreed upon. ASARCO timely appeals.

## II.     STANDARD OF REVIEW

Our review of a district court's decision confirming an arbitration award is de novo. *Hawaii Teamsters & Allied Workers Union, Local 996 v. United Parcel Serv.*, 241 F.3d 1177, 1180 (9th Cir. 2001). "Our review of labor arbitration awards is, however, extremely deferential because 'courts do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.'" *Id.* (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987)) (internal alterations omitted). Unless the arbitrator has "'dispensed his own brand of industrial justice' by making an award that does not 'draw its essence from the collective bargaining agreement,'" we must confirm the award. *Id.* at 1181 (quoting *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960)) (internal alterations omitted).

The context of collective bargaining warrants this extremely limited scope of review because the parties have agreed to have their disputes decided by an arbitrator chosen by them: "[I]t is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." *Id.* "Indeed, the mandatory and prearranged arbitration of grievances is a critical aspect of the parties' bargain, the means through which they agree 'to handle the anticipated unanticipated omissions of the collective bargaining agreement.'" *Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173, Int'l Ass'n of Machinists & Aerospace Workers*, 886 F.2d 1200, 1205 (9th Cir. 1989) (*en banc*) (quoting St. Antoine, *Judicial Review of Labor Arbitration Awards: A Second Look at Enterprise Wheel and Its Progeny*, 75 Mich.L.Rev. 1137, 1140 (1977)) ("*Judicial*

*Review*") (internal alterations omitted). Such omissions occur because "[u]nlike the commercial contract, which is designed to be a comprehensive distillation of the parties' bargain, the collective bargaining agreement is a skeletal, interstitial document." *Id.*

Consequently, "[t]he labor arbitrator is the person the parties designate to fill in the gaps; for the vast array of circumstances they have not considered or reduced to writing, the arbitrator will state the parties' bargain." *Id.* He is "'their joint *alter ego* for the purpose of striking whatever supplementary bargain is necessary' to handle matters omitted from the agreement." *Id.* (quoting *Judicial Review*, 75 Mich.L.Rev. at 1140). Because of this role, the arbitrator "cannot 'misinterpret' a collective bargaining agreement," *id.*, and "even if we were convinced that the arbitrator misread the contract or erred in interpreting it, such a conviction would not be a permissible ground for vacating the award." *Va. Mason Hosp. v. Wash. State Nurses Ass'n*, 511 F.3d 908, 913–14 (9th Cir. 2007) (footnote omitted). This deference applies "'even if the basis for the arbitrator's decision is ambiguous and notwithstanding the erroneousness of any factual findings or legal conclusions.'" *Federated Dep't Stores v. United Foods & Commercial Workers Union, Local 1442*, 901 F.2d 1494, 1496 (9th Cir. 1990) (quoting *Stead Motors*, 886 F.2d at 1209).

## III.    ANALYSIS

Although judicial review of arbitration awards is extremely limited, the Supreme Court and this Circuit have articulated three exceptions to the general rule of deference to an arbitrator's decision: "(1) when the arbitrator's award does not draw its essence from the collective bargaining agreement and the arbitrator is dispensing his own brand of industrial justice; (2) when the arbitrator exceeds the

boundaries of the issues submitted to him; and (3) when the award is contrary to public policy." *Id.* (internal quotation marks omitted).

Given the great deference due to arbitrator's decisions, ASARCO wisely does not challenge the arbitrator's findings of fact or conclusions of law, but instead argues that the arbitrator's award does not warrant deference based on all three exceptions. The first two exceptions are interrelated, and we will address them simultaneously before turning to the third exception. ASARCO argues that the no-add provision in the BLA deprived the arbitrator of authority to reform the BLA, and the arbitrator's award does not draw its essence from the BLA because it ignores this provision.

In deciding whether the arbitrator's award draws its essence from the BLA, "the quality – that is the degree of substantive validity – of [his] interpretation is, and always has been, beside the point." *Sw. Reg'l Council of Carpenters v. Drywall Dynamics, Inc.*, 823 F.3d 524, 532 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 829, 197 L. Ed. 2d 68 (2017). "Instead, the appropriate question for a court to ask when determining whether to enforce a labor arbitration award interpreting a collective bargaining agreement is a simple binary one: Did the arbitrator look to and construe the contract, or did he not?" *Id.* This is because "'[i]t is only when the arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable.'" *Id.* at 531 (quoting *Major League Baseball Players Ass'n v. Garve*y, 532 U.S. 504, 509, 121 S. Ct. 1724, 149 L. Ed. 2d 740 (2001)) (internal alterations omitted). Accordingly, "the court's inquiry ends" if the arbitrator "made any interpretation or application of the agreement at all." *Id.* at 531–32. We therefore "must limit [our] review to whether

the arbitrator's solution can be rationally derived from some plausible**[3]** theory of the general framework or intent of the agreement." *United Food & Commercial Workers Int'l Union, Local 588 v. Foster Poultry Farms*, 74 F.3d 169, 173 (9th Cir. 1995), *opinion amended on denial of reh'g*, (9th Cir. Jan. 30, 1996).

We have no doubt that the arbitrator's decision was grounded in his reading of the BLA. The arbitrator acknowledged that new hires were not entitled to the Bonus under the plain language of the BLA and that he could not find for the Union based solely on the language contained in the BLA. He also recognized that arbitrators do not generally have the authority to rewrite CBAs or ignore their provisions. He noted, however, that arbitrators can reform a contract to correct an obvious mutual mistake. Citing a substantial amount of evidence that he heard over six days, the arbitrator concluded that the parties presented precisely this scenario: in negotiating the 2011 MOA, they never discussed or even acknowledged that if the BLA were amended to make new hires ineligible for the pension plan, they would also be ineligible for the Bonus. Although he did not specifically cite the no-add provision when explaining the basis of his award, the arbitrator did quote it directly as relevant language of the BLA and noted that, absent a

---

**[3]** As the parties note, this Court has retired the use of the term "plausibility" when describing judicial review of labor arbitration awards. *See Drywall Dynamics*, 823 F.3d at 532. This step was taken not to "propose any substantive change to the settled law in this area," but rather to underscore the limited nature of the inquiry, which is whether "the arbitrator look[ed] at and construe[d] the contract." *Id.*

finding of mutual mistake, he would not have the authority to reform the BLA.[4]

Given the arbitrator's extensive treatment of the BLA and acknowledgment of the no-add provision, we agree with the district court that the arbitrator's decision was grounded in his reading of the BLA, and are "bound to enforce the award" even if "the basis for the arbitrator's decision may be ambiguous." *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 764, 103 S. Ct. 2177, 2182, 76 L. Ed. 2d 298 (1983); *see also Drywall Dynamics*, 823 F.3d at 533("'[A]rbitrators have no obligation to give their reasons for an award at all,'" and a court may not "'infer the non-existence of a particular reason merely from the award's silence on a given issue.'") (quoting *Stead Motors*, 886 F.2d at 1208, 1213); *Stead Motors*, 886 F.2d at 1208 ("'[M]ere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award.'") (quoting *Enterprise Wheel*, 363 U.S. at 598, 80 S. Ct. at 1361).

Upon concluding that the parties were mutually mistaken as to the impact of the 2011 MOA on new hires' eligibility for the Bonus, the arbitrator was authorized to reform the CBA despite ASARCO's protest. The standard arbitration clause in the BLA provided that the arbitrator had authority

---

[4] Respectfully, the dissenting opinion is incorrect when it states that the arbitrator failed to discuss, or even mention, the no-add provision. In fact, the arbitrator discussed the no-add provision at length on pages 14 and 16 of the arbitration award, quoting it directly, and discussing the parties' positions regarding its impact. The arbitrator then acknowledged that he lacked authority to rewrite the BLA or ignore its provisions absent a finding of mutual mistake.

to decide all issues of contract interpretation, which, of course, would include the scope of the no-add provision. Additionally, the arbitrator was not strictly bound only to the provisions of the BLA in crafting a remedy, because "the arbitrator is entitled, and is even expected, to range afield of the actual text of the collective bargaining agreement he interprets." *Stead Motors*, 886 F.2d at 1206. The arbitrator was entitled to rely on a number of resources, including "'statutes, case decisions, principles of contract law, practices, assumptions, understandings, [and] the common law of the shop'" in his effort to give meaning to the BLA. *Hawaii Teamsters*, 241 F.3d at 1183 (quoting *McKinney v. Emery Air Freight Corp.*, 954 F.2d 590, 595 (9th Cir. 1992)).

Applying ordinary principles of contract law, the arbitrator concluded that the proper remedy for the parties' mutual mistake was to reform the BLA to make it reflect the terms the parties actually agreed upon. *See Caliber One Indem. Co. v. Wade Cook Fin. Corp.*, 491 F.3d 1079, 1083 (9th Cir. 2007) (reformation of contract is warranted to correct mutually mistaken terms). Even if we were to conclude otherwise, "where it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect." *Misco*, 484 U.S. at 38, 108 S. Ct. at 371. Because the arbitrator was construing the BLA in light of the evidence presented to him and basic principles of contract law, his decision and award are due great deference. *See W.R. Grace*, 461 U.S. at 765, 103 S. Ct. at 2183 ("Regardless of what our view might be of the correctness of [the arbitrator's] contractual interpretation, [ASARCO] and the Union bargained for that interpretation. A federal court may not second-guess it.") (citation omitted). Although we could conceivably have reached a different result if we were to interpret the BLA ourselves, we

conclude that the arbitrator's award drew its essence from the BLA.

The cases ASARCO cites to support its argument that the no-add provision left the arbitrator powerless to remedy what he found to be an obvious mutual mistake fail to do so. First, ASARCO tells us that we need look only to one case to vacate the arbitrator's award: *West Coast Telephone*. *W. Coast Tel. Co. v. Local Union No. 77, Int'l Bhd. of Elec. Workers, AFL-CIO*, 431 F.2d 1219 (9th Cir. 1970). In *West Coast Telephone* the employer sought to reform its CBA because it contained wage schedules for certain employees that reflected wages higher than what the employer and Union had agreed upon when bargaining. *Id.* at 1220. The employer was made aware of this discrepancy when the Union filed a grievance because the employees were being paid the agreed upon wage rather than the higher wage contained in the CBA. *Id.* The Union requested the dispute be submitted to arbitration under the terms of the CBA, but the company refused to arbitrate and instead filed suit in the district court seeking reformation. *Id.* The Union moved to compel arbitration. The district court denied the motion, and the Union appealed. *Id.* This court, without any explanation, affirmed:

> [T]he company seeks a change in the terms of the written agreement. It can be said with positive assurance that such an issue is not arbitrable under the agreement in question. The arbitration clause of the contract expressly provides that the arbitrator 'shall have no power to destroy, change, add to or delete from its terms.'

*Id.* at 1221.

ASARCO's reliance on *West Coast Telephone* is misplaced. *West Coast Telephone* did not grapple with courts' deference to arbitrators' decisions, nor did it hold that arbitrators may never, under any circumstances, reform contracts that contain no-add provisions.[5] It simply held that the issue of contract reformation was not arbitrable under the facts of that case because the contract contained a no-add provision. That question is not before this court. Indeed, neither the district court nor this court in *West Coast Telephone* ever indicated whether the arbitration clause provided that the arbitrator was to decide all issues of contract interpretation. ASARCO attempts to discard this difference as one of inconsequential procedural posture, but here procedural posture makes all the difference. Having submitted the grievance to the arbitrator, and having argued to the arbitrator that the contract limited his authority to fashion a remedy, ASARCO must now somehow overcome the deference that is afforded the arbitrator's decision. *West Coast Telephone* does not help in that regard.

Even if this court were in the same posture as the court in *West Coast Telephone*, we would still defer to the arbitrator's determination of whether and the extent to which the no-add provision limited the arbitrator's ability to fashion a remedy. *Int'l Assoc. of Machinists v. Howmet Corp.*, 466 F.2d 1249, 1252–53 (9th Cir 1972) ("a clause limiting the power of the arbitrator to add to, subtract from, or alter the provisions of the agreement does not affect the jurisdiction of the arbitrator, but merely limits his power to fashion an award.") (citing *Tobacco Workers Int'l Union,*

---

[5] *West Coast Telephone* did suggest that reformation is the appropriate remedy when the provisions of a contract do not reflect the parties' agreed upon terms. *See West Coast Telephone*, 431 F.2d at 1221–22.

*Local 317 v. Lorillard Corp.,* 448F.2d 949, 955 (4th Cir. 1971)); *see also Kraft Foods, Inc. v. Office and Prof'l Employees Int'l Union, AFL-CIO, CLC, Local 1295*, 203 F.3d 98, 101 (1st Cir. 2000) ("While courts disagree on the extent to which a 'no-modification' clause bars arbitrators from looking beyond the language of the agreement to determine breach, courts agree that 'the fashioning of an appropriate remedy is not an addition to the obligations imposed by the contract.'") (quoting *Tobacco Workers Int'l Union*, 448 F.2d at 956).

In the instant case, the dispute between the parties was unquestionably arbitrable. ASARCO argued to the arbitrator that he lacked contractual authority to fashion an award. The arbitrator disagreed. His decision is entitled to deference.

The other cases cited by ASARCO are equally inapt, if not more so. Not one of them concerns a mutual mistake made by two parties who have agreed to submit their dispute to an arbitrator, or what the proper remedy would be in such a situation. For the reasons discussed above, these facts matter. Additionally, ASARCO faults the Union for not seeking reformation of the BLA in the district court, but ASARCO knew all along that the Union sought reformation. It did not and now cannot present the issue to this court and hope for a better outcome.

Finally, ASARCO argues that the arbitrator's award should be vacated because it violates public policy. The Union argues that ASARCO waived this argument by failing to present it in the district court. ASARCO concedes this fact, but urges that an argument first raised on appeal is not waived when the issue is purely one of law and the opposing party will not be prejudiced. *See United States v. Carlson*, 900 F.2d 1346, 1349 (9th Cir. 1990). Regardless of whether

ASARCO's argument is waived, it fails. **[6]**  There is "a very limited 'public policy exception' to the stringent rule ordinarily requiring courts' enforcement of arbitrators' decisions interpreting and applying collective bargaining agreements." *Drywall Dynamics*, 823 F.3d at 533 (citations omitted). Under this exception "a court may vacate an arbitration award that 'runs contrary to an explicit, well-defined, and dominant public policy, as ascertained by reference to positive law and not from general considerations of supposed public interests.'" *Id.* at 534 (quoting *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 63, 121 S. Ct. 462, 148 L. Ed. 2d 354 (2000)) (internal alterations omitted).

According to ASARCO, the public policy interest served by the collective bargaining process demands that the award be vacated because courts should not confirm arbitration awards that distort the product of collective bargaining – the Collective Bargaining Agreement.  Assuming ASARCO has stated an "explicit, well-defined, and dominant public policy," its argument still fails for a very simple reason.  The arbitrator did not distort the BLA; he reformed it so that it no longer distorted the agreement that the parties made during collective bargaining.  For the reasons discussed above, the arbitrator was authorized to do so upon finding the parties were mutually mistaken about the terms they agreed to.  The award does not violate public policy.

---

**[6]** In light of our disposition, we need not address the Union's alternative waiver argument.  Further, as we point out in the text, the parties stipulated that the matter was properly before the arbitrator and that the arbitrator had jurisdiction to decide the grievance, *supra* section I.  There is therefore no need for us to address the dissent's discussion of this issue. *See* Dissent at section II.

We conclude that the arbitrator was acting within his authority when he crafted a remedy to cure the parties' mutual mistake.

**AFFIRMED.**

---

IKUTA, Circuit Judge, dissenting:

The "no-add" language in the collective bargaining agreement (the Basic Labor Agreement, or BLA) signed by ASARCO and United Steel (the Union) is unmistakably clear:

> The arbitrator shall not have jurisdiction or authority to add to, detract from or alter in any way the provisions of this Agreement.

And yet, in defiance of this plain language, the majority holds today that the arbitrator *does* have the authority to rewrite the terms of the agreement under the circumstances of this case.

The majority's conclusion is flat wrong. First, ASARCO did not clearly and unmistakably agree to let the arbitrator decide the scope of his own authority, and so the arbitrator lacked the power to decide whether the BLA authorized him to rewrite the BLA. Second, when mistakenly exercising authority he did not have, the arbitrator reached the wrong answer: the no-add provision makes clear that the arbitrator does *not* have the power to rewrite the BLA. Because the arbitrator ignored the no-add provision, his award fails to draw its essence from the BLA and is invalid. I dissent from the majority's contrary conclusion.

## I

ASARCO and the Union are parties to a collective bargaining agreement, the BLA, which provides for the arbitration of grievances. The BLA explains the scope of the arbitrator's authority as follows:

> The member of the Board [of Arbitration] chosen in accordance with Paragraph 7(a) below [providing for selection on a case-by-case basis] shall have the authority to hear and decide any grievance appealed in accordance with the provisions of the grievance procedure.

The BLA includes a "no add" provision that limits the arbitrator's authority: "The arbitrator shall not have jurisdiction or authority to add to, detract from or alter in any way the provisions of this Agreement."

A different section of the BLA provides that certain employees are entitled to a Copper Price Bonus, a quarterly bonus based on the price of copper. Only those employees covered by the pension plan are eligible for the Copper Price Bonus. When the BLA was updated in 2011, the Union and ASARCO added the following language:

> Employees hired on and after the Effective Date [July 1, 2011] are not eligible to participate in the pension plan.

A dispute between ASARCO and the Union arose after the 2011 BLA was signed. Because the new employees were not covered by the pension plan, ASARCO took the position they were not eligible for the Copper Price Bonus. The

Union disagreed and filed a grievance, which the parties submitted to arbitration.

The subsequent arbitration decision set forth a statement of the issue and summarized the positions of each party. According to the arbitration decision, the parties were unable to agree upon a statement of the issue before the arbitrator, and instead agreed to allow the arbitrator to frame the issue. The arbitrator determined that the proper statement of the issue was:

> Are employees hired on and after July 1, 2011 entitled to receive the Copper Price Bonus?

The Union's position in arbitration was that there was a mutual mistake which required a reformation of the BLA. Both parties had failed to recognize that eliminating the pension plan for new employees would make them ineligible for the Copper Price Bonus, the Union claimed, and neither party intended this result. Therefore, according to the Union, the BLA must be reformed to make such new employees eligible, and the no-add provision did not prevent this.

ASARCO's position in arbitration was that the BLA clearly states that new employees are not eligible for the Copper Price Bonus, and the arbitrator must give effect to the BLA as written. With respect to the Union's preferred remedy of reformation, ASARCO asserted that the arbitrator does not have the authority under the clear language of the BLA to order that new employees be made eligible for the Copper Price Bonus or to rewrite the BLA to make them eligible for the bonus. According to ASARCO, "a mistake does not authorize an arbitrator to exceed the authority

granted to the arbitrator and limited by the parties themselves."[1]

Without addressing ASARCO's position that the arbitrator lacked authority to rewrite the BLA, and without any discussion of the no-add provision or the limits of his jurisdiction, the arbitrator amended the pension provision to include five additional lines of text:

> Employees hired on and after the Effective Date are not eligible to participate in the pension plan. *However, the Company shall treat such Employees as if they were accruing Continuous Service under the Retirement Income Plan for Hourly Rated Employees of ASARCO Inc. on the same terms as other Employees, only for purposes of determining eligibility for the Copper Price Bonus pursuant to Article 9, Section C.5 of the BLA.*

In reaching this conclusion, the arbitrator doubly erred. First, whether the arbitrator had the authority to resolve the parties' dispute over the no-add provision is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise. The arbitrator erred in implicitly concluding he had such authority. Second, the arbitrator's decision to rewrite the BLA does not "draw its essence from the collective bargaining agreement," *Federated Emp'rs of Nev., Inc. v. Teamsters Local No. 631*,

---

[1] ASARCO reiterated this same position in its opening statement before the arbitrator. It asserted that the arbitrator had no jurisdiction to "add to or detract from or alter in any way the provisions of the agreement," and urged the arbitrator to reject the Union's argument that the arbitrator should reform the contract.

600 F.2d 1263, 1264 (9th Cir. 1979).  For both reasons, the arbitrator's award is unenforceable.

## II

The arbitrator's first and most crucial error was his implicit conclusion that he could resolve ASARCO's argument about the scope of his authority.  The majority compounds this error by silently assuming the same.

## A

It is a "fundamental principle that arbitration is a matter of contract." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010).  Accordingly, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) ("[T]he first principle that underscores all of our arbitration decisions: Arbitration is strictly 'a matter of consent.'").  Thus, arbitration "is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 943 (1995).

*First Options* considered three types of disputes that might be submitted to an arbitrator.  First, the parties may have a disagreement about the merits of one or several issues (the "Merits Question").  Second, they may disagree about whether their contract required them to arbitrate the merits of such issues (the "Arbitrability Question").  Third, they may disagree about whether a court or the arbitrator should decide the Arbitrability Question, i.e., the question whether the arbitrator has authority to decide that the parties agreed to arbitrate a specific dispute. *Id.* at 942.  Because this third

species of dispute raises the question whether the parties delegated the arbitrability decision to the arbitrator, it is sometimes referred to as the "Delegation Question." The Supreme Court held that the arbitrability of any of these issues depends upon whether the parties agreed to submit the issue to the arbitrator. *Id.* at 944. This applies equally to the Delegation Question: If the parties disagree about whether the arbitrator should decide whether a particular dispute is arbitrable, the question "'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *Id.* at 943.

The Supreme Court has recognized that the third question—whether the parties agreed to let the arbitrator decide the arbitrability of a particular dispute (the Delegation Question)—"is rather arcane." *Id.* at 945. Because "[a] party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers," courts should not interpret a contract's "silence or ambiguity" on the Delegation Question as giving arbitrators the power to decide whether a specified question falls within their arbitral authority. *Id.* "[D]oing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." *Id.* As a result, unless the parties' contract "clear[ly] and unmistakabl[y]" provides that the arbitrator will decide whether the parties agreed to arbitrate a particular issue, a court will decide that question. *Id.* at 944; *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (holding that "the question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination"); *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) (holding that "whether

the court or the arbitrator decides arbitrability is 'an issue for judicial determination unless the parties clearly and unmistakably provide otherwise'").[2]

*First Options* emphasized that courts should not be over-eager to find the requisite "clea[r] and unmistakabl[e]" evidence of consent to arbitrate the question whether a particular issue is arbitrable. 514 U.S. at 944. "[M]erely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue." *Id.* at 946. Clear and unmistakable consent cannot be implied from arguing arbitrability to the arbitrator because such conduct does not evince "a willingness to be effectively bound by the arbitrator's decision on that point." *Id.* Indeed, insofar as a party "forcefully object[s] to the arbitrators deciding their dispute . . . one naturally would think that they did *not* want the arbitrators to have binding authority over them." *Id.* Said otherwise, the parties must expressly agree that the arbitrator (rather than a court) will decide the arbitrability of a particular issue; a court may not infer that the parties have given the arbitrator authority to decide the Delegation Question merely because they argued about it before the arbitrator.

Before *First Options*, we had adopted a different rule. *See George Day Constr. Co. v. United Bhd. of Carpenters & Joiners of Am., Local 354*, 722 F.2d 1471, 1475 (9th Cir.

---

[2] By contrast, when "the parties have a contract that provides for arbitration of some issues," a court presumes the parties intended to arbitrate related issues, *First Options*, 514 U.S. at 945. There is a "liberal federal policy favoring arbitration agreements," pursuant to which, "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). But "federal policy in favor of arbitration does not extend to deciding questions of arbitrability." *Oracle Am., Inc.*, 724 F.3d at 1072.

1984).  *George Day* held that when the parties argue about both the merits of the dispute, and about whether the arbitrator has the authority to decide that dispute, "and the case is submitted to the arbitrator for decision," then "the parties have consented to allow the arbitrator to decide the entire controversy, including the question of arbitrability." *Id.*  In other words, under *George Day*, if the parties argued the Merits Question and the Arbitrability Question before the arbitrator, we conclude that they tacitly agreed to let the arbitrator decide the Delegation Question.

We adhered to this rule in the labor context even after *First Options* was decided.  *See United Bhd. of Carpenters & Joiners of Am., Local No. 1780 v. Desert Palace, Inc.*, 94 F.3d 1308, 1311 (9th Cir. 1996).  *Desert Palace* reasoned that *First Option*'s holding applied only in the commercial context, not "in the collective bargaining context, where there is a strong federal policy favoring arbitration of labor disputes."  *Id.* at 1312 (emphasis omitted); *see also Tristar Pictures, Inc. v. Dir.'s Guild of Am., Inc.*, 160 F.3d 537, 540 (9th Cir. 1998); *Pacesetter Constr. Co. v. Carpenters 46 N. Cal. Ctys. Conference Bd.*, 116 F.3d 436, 439 (9th Cir. 1997).

But *Granite Rock* superseded *Desert Palace*.  In *Granite Rock*, the Supreme Court "reemphasize[d] the proper framework for deciding when disputes are arbitrable under [its] precedents," and noted that "[i]t is well settled in *both commercial and labor cases*" that "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*."  *Id.* at 296–97 (citing *First Options*, 514 U.S. at 943; *AT&T Tech.*, 475 U.S. at 648–649) (first emphasis added).  Further, the Supreme Court stated that "the rule requiring 'clear and unmistakable' evidence of an agreement to arbitrate

arbitrability" would apply to the labor dispute at issue in *Granite Rock*, but for the fact that the parties had already conceded that a court should decide the question of arbitrability. *Id.* at 297 n.5 (quoting *First Options*, 514 U.S. at 944).

Because *George Day* is "clearly irreconcilable" with *Granite Rock* and *First Options*, it has been "effectively overruled." *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc). Thus, the principles laid out in *AT&T*, *First Options*, and *Granite Rock* (that a court must decide the Delegation Question absent clear and unmistakable evidence that the parties authorized the arbitrator to decide that question) are controlling.

B

The application of the Supreme Court's precepts to the facts of this case is relatively straightforward. Applying *First Options*'s framework, there were two disputes regarding the merits. ASARCO and the Union disputed both whether new employees were entitled to the Copper Price Bonus and whether the arbitrator had the authority to revise the BLA. Both of these issues are Merits Questions. While ASARCO agreed that it would arbitrate the dispute over the Copper Price Bonus, it did not agree to arbitrate its dispute about whether the arbitrator had the authority to revise the BLA (the Arbitrability Question). Rather, ASARCO repeated its position that the arbitrator had no such authority. Nor did ASARCO agree that the BLA gave the arbitrator the power to decide the scope of its authority to revise the BLA (the Delegation Question).

As explained in *First Options*, we must presume that the parties did not agree that the arbitrator should decide this

Delegation Question, unless there is clear and unmistakable evidence to the contrary.  There is no such evidence here.

Because arbitration is a matter of consent, we must first look to "the language of the contract" to "define[] the scope of disputes subject to arbitration," *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).  While the BLA states that the arbitrator has the authority "to hear and decide any grievance appealed" by the parties, the BLA provides that the arbitrator lacks the authority to "add to, detract from or alter in any way the provisions of" the BLA.  It is silent on the Arbitrability Question (whether ASARCO and the Union have agreed to arbitrate the question whether the arbitrator may "add to, detract from or alter in any way the provisions of" the BLA).  It is equally silent on the Delegation Question (whether the parties have agreed that the arbitrator can determine the Arbitrability Question).  Because the parties did not clearly and unmistakably agree to arbitrate the question whether the arbitrator has the authority to revise the BLA, that question "is to be decided by the court, not the arbitrator." *AT&T*, 475 U.S. at 649.

In implicitly reaching a contrary conclusion, the majority asserts that "the parties stipulated that the matter was properly before the arbitrator and that the arbitrator had jurisdiction to decide the grievance."  Maj. Op. at 5.  This characterization is wholly unsupported by the record. ASARCO did not stipulate that the arbitrator had the authority to decide whether it could reform the BLA.  Rather, from the beginning ASARCO vociferously and repeatedly pointed out that the BLA precluded the arbitrator from reforming the contract.  While the parties agreed to submit their grievance regarding whether new employees were eligible for the Copper Bonus to the arbitrator, and allowed the arbitrator to frame the Copper Bonus issue, the issue

submitted to arbitration did not include the scope of the arbitrator's authority to revise the contract. Rather, as the arbitrator himself explained, "the proper statement of the issue is as follows: Are employees hired on and after July 1, 2011 entitled to receive the Copper Price Bonus?"

Further, because ASARCO did not clearly agree to submit the question of the arbitrator's authority to rewrite the BLA to arbitration, the court must decide the Delegation Question. I would reach this issue, and hold that the arbitrator had no authority to decide that ASARCO and the Union agreed to arbitrate the question whether the BLA could be revised. The parties' contract clearly establishes that the arbitrator lacks the authority to modify the agreement even when there is a mutual mistake, *see W. Coast Tel. Co. v. Local Union No. 77, Int'l Bhd. of Elec. Workers, AFL-CIO*, 431 F.2d 1219, 1221 (9th Cir. 1970). There is no "clear and unmistakable" evidence that the parties contemplated that an arbitrator could reconsider the BLA's prohibition of any arbitral revisions of the BLA and reach a different conclusion. I therefore would reverse the district court's conclusion to the contrary.

## III

Even if the majority were right in assuming that ASARCO had agreed to delegate to the arbitrator the question whether the arbitrator had the authority to rewrite the BLA, the majority errs in upholding the arbitration award here because the arbitrator plainly exceeded the authority granted to him by the BLA.

The BLA's no-add provision says: "The arbitrator shall not have jurisdiction or authority to add to, detract from or alter in any way the provisions of this Agreement." But the

arbitrator amended the pension provision to include five additional lines of text:

> Employees hired on and after the Effective Date are not eligible to participate in the pension plan. However, the Company shall treat such Employees as if they were accruing Continuous Service under the Retirement Income Plan for Hourly Rated Employees of ASARCO Inc. on the same terms as other Employees, only for purposes of determining eligibility for the Copper Price Bonus pursuant to Article 9, Section C.5 of the BLA.

Can he do that? We have said no: "an arbitrator has no authority to ignore the plain language of a collective bargaining agreement that limits the scope of his authority." *Haw. Teamsters & Allied Workers Union, Local 996 v. United Parcel Serv.*, 241 F.3d 1177, 1181 (9th Cir. 2001). When issuing awards, "an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960).

In reviewing an arbitral award, we are likewise bound by express limitations on an arbitrator's authority. A court may not enforce an arbitration award if it does not "draw its essence from the collective bargaining agreement." *Federated Emp'rs*, 600 F.2d at 1264. An arbitration award that violates "an express and explicit restriction on the arbitrator's power" does not draw its essence from the agreement, but rather "demonstrates that the arbitrator ignored the essence of the agreement in making the award." *Id.* at 1265. Because the arbitrator here ignored the essence

of the agreement by violating an express and explicit restriction on his power, the award must be vacated. *See id.*

The majority abandons these principles today based on two unreasoned conclusions. First, the majority upholds the arbitrator's award because it "was grounded in his reading" of the collective bargaining agreement. Maj. Op. at 10. On its face, this statement is dead wrong: the arbitrator did not even mention, let alone construe, the no-add provision in formulating his award.[3]  Unlike in *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 570 (2013), where the arbitrator based a potentially unreasonable construction of his authority on a "textual exegesis," the arbitrator here made no effort to reconcile his decision to add five lines of text to the agreement with the contract's no-add provision.  The majority does not really dispute this point: it concedes that the arbitrator "did not specifically cite the no-add provision when explaining the basis of his award," but concludes it was sufficient for the arbitrator to "quote it directly" in the section of the arbitration decision entitled "Relevant Language of the BLA," which it deems to be an "acknowledgment of the no-add provision." Maj. Op. at 10–11.  But the arbitrator's knowledge that the collective

---

[3] The Arbitration Award is divided into six sections entitled: "Background"; "Relevant Language of the BLA"; "Relevant Language of the 2011 Memorandum of Agreement"; "Statement of the Issue"; "Summary of the Position of the Parties"; and "Discussion and Award." The no-add provision is mentioned in two sections of the Arbitration Award.  The section entitled "Relevant Language of the BLA," sets forth the text of four subsections of the collective bargaining agreement, including one entitled "Board of Arbitration" which explains the role of the arbitrator and contains the no-add provision.  The "Summary of the Position of the Parties" sets forth the opposing positions of the Union and ASARCO regarding the effect of the no-add provision. The section entitled "Discussion and Award," where the arbitrator provides his analysis and conclusion, does not discuss or mention the no-add provision.

bargaining agreement contained a no-add provision is immaterial if the arbitrator failed to construe it. Obviously, a "few references" to a key issue in dispute does not show that the arbitrator "did anything other than impose its own policy preference." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 676 (2010). Here the arbitrator expressly stated he was reforming the agreement "in the interest of justice and fairness." In other words, the arbitrator issued an award that "simply reflect[s] the arbitrator's own notions of industrial justice." *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000) (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

Second, the majority states that the arbitrator's award is binding because arbitrators can reform a contract to correct a mutual mistake and "to make it reflect the terms the parties actually agreed upon." Maj. Op. at 12. This sweeping assertion is inapposite here. While arbitrators may have power to reform an agreement where permitted to do so by the collective bargaining agreement, the arbitrator *in this case* clearly lacked that power. Rather, "the terms the parties actually agreed upon" in *this* collective bargaining agreement expressly state that the arbitrator may not add provisions to the agreement. Because "an arbitrator's authority derives solely from the contract," *McDonald v. City of W. Branch, Mich.*, 466 U.S. 284, 290 (1984), the arbitrator here could not add provisions to the agreement, even if there had been a mutual mistake. The majority fails to explain why the arbitrator here could exercise a power directly contrary to the express restrictions on the arbitrator's authority.

Indeed, the majority cites no case supporting its proposition that an arbitrator can reform a contract based on

mutual mistake when the parties expressly prohibit the arbitrator from adding to or modifying the agreement. To the contrary, we have held that a no-add provision prohibits an arbitrator from modifying an agreement even when there is a mutual mistake. *See W. Coast Tel. Co.*, 431 F.2d at 1221. In *West Coast Telephone*, we considered a union's demand to compel arbitration of the question whether its collective bargaining agreement should be reformed to reflect the parties' intent. *Id.* at 1220. We concluded "with positive assurance" that the issue of reformation due to mutual mistake was not arbitrable because "[t]he arbitration clause of the contract expressly provides that the arbitrator 'shall have no power to destroy, change, add to or delete from its terms.'" *Id.* at 1221. In other words, a no-add provision in a collective bargaining agreement precludes the arbitrator from rewriting the agreement.

The majority attempts to distinguish *West Coast Telephone* because it addressed whether a dispute over reformation was arbitrable, rather than whether the arbitrator lacked authority to reform the contract, and therefore does not definitively resolve the issue whether the arbitrator's award here drew its essence from the agreement. Maj. Op. at 14. But *West Coast Telephone*'s holding was based on its conclusion that a no-add provision deprives the arbitrator of the authority to modify the agreement, and this ruling is binding on us. 431 F.2d at 1221. We need not consider whether we would defer to an arbitrator who erroneously construed a no-add provision as allowing reformation of a contract in a particular case. That issue is not before us because—as mentioned above—the arbitrator here did not construe the no-add provision. Because under our precedent the arbitrator's modification was contrary to the no-add provision and is therefore not a "plausible interpretation" of the contract, and because there is no basis for deferring to

the arbitrator's construction of the no-add provision in this case, his award must be vacated.[4]  *Federated Empr's*, 600 F.2d at 1265.

The arbitrator here dispensed his own brand of industrial justice by exceeding the scope of his delegated powers and modifying the agreement "in the interest of justice and fairness."  Because "an arbitrator has no authority to ignore the plain language of a collective bargaining agreement that limits the scope of his authority," the award fails to draw its essence from the collective bargaining agreement.  *Haw. Teamsters*, 241 F.3d at 1181.

\*\*\*

In short, the BLA deprives the arbitrator of the authority to rewrite the agreement, and also deprives the arbitrator of the authority to reconsider and reject this limitation on his authority.  Either way, the arbitrator's award is invalid. In holding otherwise, the majority today turns its back on Supreme Court principles and our own precedent.  I dissent.

---

[4] The majority states that we have "retired the use of the term 'plausibility' when describing judicial review of labor arbitration awards." Maj. Op. at 10 n.3 (citing *Sw. Reg'l Council of Carpenters v. Drywall Dynamics, Inc.*, 823 F.3d 524, 532 (9th Cir. 2016)).  But of course "a three-judge panel may not overrule a prior decision of the court," *Gammie*, 335 F.3d at 899, except under circumstances not met by *Drywall*.  Accordingly, as the majority concedes, *Drywall* did not make any substantive change to the settled law in this area.  Maj. Op. at 10 n.3.