UNITED BROTHERHOOD OF CARPEN-
TERS AND JOINERS OF AMERICA,
LOCAL NO. 1780, Plaintiff–Appellee,

v.

DESERT PALACE, INCORPORATED,
d/b/a Caesars Palace Las Vegas,
Defendant–Appellant.

No. 95–15480.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 15, 1996.

Decided Sept. 4, 1996.

Mark J. Ricciardi, Kamer & Ricciardi, Las Vegas, Nevada, for the defendant–appellant.

Hope J. Singer, Taylor, Roth, Bush & Geffner, Burbank, California, for the plaintiff–appellee.

Before PREGERSON and TROTT, Circuit Judges, and WINMILL, District Judge*.

PREGERSON, Circuit Judge:

Defendant Desert Palace, Inc. (the "employer") appeals the district court's grant of summary judgment compelling arbitration in this case. Plaintiff United Brotherhood of Carpenters and Joiners of America, Local No. 1780 ("union") brought this action to compel arbitration pursuant to a collective bargaining agreement between the union and the employer under the Labor Management Relations Act, 29 U.S.C. § 185. We have jurisdiction under 28 U.S.C. § 1291. The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1337. We affirm. We conclude that where a sufficiently broad arbitration clause exists, the arbitrator, rather than the courts, must decide in the first instance whether a particular dispute is arbitrable.

## BACKGROUND

The parties stipulated to the facts in this case. The employer and the union were parties to a collective bargaining agreement ("CBA") for the period of August 1, 1991, through July 31, 1995.

On October 18, 1993, the employer assigned an employee, Jose A. Galvan (the "employee"), to a "light duty" position while the employee recovered from a work-related injury. The employee was hurt while working for the employer as an upholsterer, a job classification covered by the CBA.

In the "light duty" assignment, the employee sorted linen and addressed envelopes for two months. During this time, the employee was paid at a rate lower than the rate he was paid as an upholsterer.[1] Before his work-related injury, the employee earned a pay rate of $16.80 as provided by the CBA.

On December 20, 1993, the employee was taken off "light duty" assignment and was reclassified as an upholsterer. The employee did not lose any seniority and other fringe benefits for the time he was assigned to the "light duty" position.

The union filed a grievance with the employer over the rate of pay the employee received during his "light duty" assignment. The union argued that the employer was required to pay the employee for the "light duty" assignment the same pay rate paid to the employee before he was injured.

The employer disagreed with the union. According to the employer, because the employee performed work that was not covered by the CBA, the employer was not required to pay the employee the higher rate under the CBA. The employer also stated its belief that this dispute was not arbitrable in a letter to the union: "After careful study and review, it is our considered opinion that grievance concerning Jose Galvan's light duty assignment pursuant to the State Industrial Insurance System's regulations and Nevada law is not arbitrable." ER at 32.

In response, on March 18, 1994, the union filed this action to compel arbitration in the United States District Court for the District of Nevada.[2] The parties stipulated to the facts in this case and filed cross-motions for summary judgment. The court granted summary judgment in favor of the union.

---

* The Honorable B. Lynn Winmill, United States District Court for the District of Idaho, sitting by designation.

1. Apparently, the employer paid the employee the minimum amount required under the Nevada state workers compensation law, known as the State Industrial Insurance System, to be considered "gainful employment." ER at 43.

2. In this action, the union also sought to compel arbitration for the grievance of another employee, Bud Collette. The district court found that the applicable six-month statute of limitations had expired for that grievance. The union has not appealed that decision.

**1310**

The minute order stated: "The grievance of Jose A. Galvan shall be submitted to arbitration to allow the arbitrator to make the determination in the first instance as to whether or not this is an issue subject to arbitration." This appeal followed.

## STANDARD OF REVIEW

We review de novo the district court's grant of summary judgment. *Jesinger v. Nevada Federal Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994). We also review de novo a district court's determination regarding arbitrability. *Southern California Dist. Council of Laborers v. Berry Constr., Inc.,* 984 F.2d 340, 343 (9th Cir.1993). The party challenging arbitrability bears the burden of showing the collective bargaining agreement excludes a particular dispute from arbitration. *Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752, Intern. Broth. of Teamsters,* 989 F.2d 1077, 1080 (9th Cir. 1993).

## DISCUSSION

Generally, the question of whether a dispute is arbitrable is decided by the courts. *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986). However, where "the parties clearly and unmistakably provide otherwise," the courts will be divested of their authority and an arbitrator will decide in the first instance whether a dispute is arbitrable. *New England Mechanical, Inc. v. Laborers Local Union 294,* 909 F.2d 1339, 1345 (9th Cir.1990) (quoting *AT & T,* 475 U.S. at 649, 106 S.Ct. at 1418–19). *See also Berry Constr.,* 984 F.2d at 344; *Northern California Newspaper Guild Local 52 v. Sacramento Union,* 856 F.2d 1381, 1383 (9th Cir.1988); *Frederick Meiswinkel, Inc. v. Laborers' Union Local 261,* 744 F.2d 1374, 1377 (9th Cir.1984), *cert. denied,* 470 U.S. 1028, 105 S.Ct. 1394, 84 L.Ed.2d 783 (1985).

We have construed broad arbitration clauses as granting an arbitrator authority to decide his or her own jurisdiction. *New England Mechanical,* 909 F.2d at 1345. *See, e.g., Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 v. Interstate Distribu-*

*tor Co.,* 832 F.2d 507, 510–511 (9th Cir.1987) (construing arbitration clause that covered "any grievance or controversy" as granting arbitrator authority to resolve arbitrability issue). Even where the arbitration clause explicitly exempts jurisdictional disputes from arbitration, we have held that the arbitrator still must decide his or her own jurisdiction. *Meiswinkel,* 744 F.2d at 1377 (construing language providing "[a]ny dispute concerning the interpretation or application of this Agreement, other than a jurisdictional dispute" as broad enough to allow the arbitrator to decide whether the dispute in fact was jurisdictional). Thus, under this circuit's precedents, allowing the arbitrator to decide arbitrability where a broad arbitration clause exists is "an act of legitimate contract interpretation." *Id.*

Examining the arbitration clause in this case, there is no question that the parties agreed to let the arbitrator decide arbitrability. The parties agreed to a broad arbitration clause, which requires all disputes "regarding the interpretation or application of the provisions of this Agreement raised by the Union or the employee alleging a violation of the terms and provisions of the Agreement" to be submitted to arbitration. The only disputes that are exempted from the grievance and arbitration procedures are those "disputes specifically excluded in other Articles" of the agreement. The CBA does not exclude arbitrability or jurisdictional disputes from the arbitration process. Thus, we conclude that the district court was correct in requiring the arbitrator, in the first instance, to decide the question of arbitrability.

Our conclusion is not affected by the Supreme Court's recent decision in *First Options of Chicago, Inc. v. Kaplan,* — U.S. ——, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). In *First Options,* the Supreme Court held that in the *commercial* arbitration context, when an arbitration agreement is silent on *who* decides arbitrability, the courts, rather than an arbitrator, must decide whether a dispute is arbitrable. *Id.* at ——, 115 S.Ct. at 1924. As the Court explained:

[T]he law treats silence or ambiguity about the question "*who* (primarily) should de-

cide arbitrability" differently from the way it treats silence or ambiguity about the question *"whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement"—for in the respect to this latter question the law reverses the presumption.... [T]his difference in treatment is understandable. The latter question arises when the parties have a contract that provides for arbitration of some issues. In such circumstances, the parties likely gave at least some thought to the scope of arbitration. And, given the law's permissive policies in respect to arbitration ... one can understand why the law would insist upon clarity before concluding that the parties did *not* want to arbitrate a related matter.... On the other hand, the former question—the "who (primarily) should decide arbitrability" question-is rather arcane. A party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers.

*Id.* at ———, 115 S.Ct. at 1924–1925 (citations omitted) (emphasis in original).

■ These policy concerns, however, do not come into play in the collective bargaining context. As we explained in our en banc decision in *Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173, Intern. Ass'n of Machinists and Aerospace Workers,* 886 F.2d 1200 (9th Cir.1989) (en banc), *cert. denied,* 495 U.S. 946, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990):

> [The labor arbitrator] does not merely provide an alternative means of resolving disputes, nor is he chosen simply for his expertise in a specific field or his ability to give definitive answers with greater efficiency and speed than the courts.... *Unlike the commercial contract, which is designed to be a comprehensive distillation of the parties' bargain, the collective bargaining agreement is a skeletal, interstitial document.* ... The labor arbitrator is the person the parties designate to fill in the gaps; for the vast array of circumstances they have not considered or reduced to writing, the arbitrator will state the parties' bargain. *He is "the parties'*

> *officially designated 'reader' of the contract ... their joint alter ego for the purpose of striking whatever supplementary bargain is necessary"* to handle matters omitted from the agreement.

*Id.* at 1205 (citations omitted) (emphasis added). *See also United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 581, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960) ("the grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government").

Thus, unlike parties in the commercial arbitration context, parties entering into a collective bargaining agreement know they are granting the arbitrator tremendous power to define and "fill in the gaps" of their agreement. In the collective bargaining context, the issue of *who* gets to decide arbitrability is *not* an "arcane" question the parties do not think about. By entering into a collective bargaining agreement, the parties know they will get an *arbitrator* rather than the courts to decide any labor dispute that arises under their collective bargaining agreement, including a dispute over arbitrability. As our precedents hold, a broad arbitration clause—even one that does not specifically mention *who* decides arbitrability—is sufficient to grant the arbitrator authority to decide his or her own jurisdiction. *See, e.g., Berry Constr.,* 984 F.2d at 344 (stating that "the power to determine arbitrability may be granted through the use of a broad arbitration clause"); *Meiswinkel,* 744 F.2d at 1377 (holding that "the arbitrator had the authority to decide whether the dispute was in fact jurisdictional").

Another reason why we decline to extend *First Options* to the collective bargaining context is that *First Options* did not address the question whether a broad arbitration clause in a collective bargaining agreement grants the arbitrator the power to decide his or her own jurisdiction. We believe that had the Supreme Court been presented with this question the Court would have adopted this circuit's view that a broad arbitration clause grants an arbitrator authority to decide his or her own jurisdiction. As the Court observed in *First Options:*

> [T]here is *no* strong arbitration-related policy favoring First Options.... After

all, the basic objective in this area is *not* to resolve disputes in the quickest manner possible, no matter what the parties' ·wishes ..., but to ensure that *commercial* arbitration agreements, like other contracts, "'are enforced according to their terms,'" ... and according to the intentions of the parties.

—— U.S. at ——, 115 S.Ct. at 1925 (emphasis added).

 This observation, that there is no strong federal policy favoring arbitration of *commercial* disputes, does not apply in the collective bargaining context, where *there is* a strong federal policy favoring arbitration of labor disputes as embodied in the Labor Management Relations Act. *See United Steelworkers,* 363 U.S. at 578, 80 S.Ct. at 1350 ("[t]he present federal policy is to promote industrial stabilization through the collective bargaining agreement"); *United Food & Commercial Workers Intern. Union, Local 588 v. Foster Poultry Farms,* 74 F.3d 169, 173 (9th Cir.1995) ("federal labor policy strongly favors the resolution of labor disputes through arbitration"); *Berry Constr.,* 984 F.2d at 343 ("[o]ur courts have long favored arbitration of labor disputes"). As we recognized in our *Stead Motors* en banc decision: "Arbitration is a central feature of the collective bargaining process, designed to function alongside the labor contract in maintaining equity and a balance of power in the workplace." 886 F.2d at 1205. Thus, to extend *First Options* to the collective bargaining context would contravene the intentions of parties who have entered into collective bargaining agreements, weaken the power of arbitrators in resolving labor disputes, and undermine the effectiveness of arbitration in maintaining industrial peace.

## CONCLUSION

For the reasons set forth above, we affirm the district court's order compelling arbitration in this case.

AFFIRMED.