Filed 3/11/21  Certified for Publication 4/9/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TRAMON WILSON-DAVIS, | B306781 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 19STCV08579) |
| v. | |
| SSP AMERICA, INC. et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Elihu M. Berle, Judge.  Affirmed.

Littler Mendelson, Denise M. Visconti and Christina H. Hayes for Defendants and Appellants.

Aegis Law Firm, Kashif Haque, Jessica L. Campbell and Ali S. Carlsen for Plaintiff and Respondent.

═══════════════════════════

Plaintiff Tramon Wilson-Davis (plaintiff), individually and on behalf of a putative class, sued his employers, defendants SSP America LAX, LLC (SSP LAX) and SSP America, Inc. (SSP Inc.) (collectively, SSP) for violations of various provisions of California's wage and hour laws. SSP moved to compel arbitration pursuant to the collective bargaining agreement between it and the labor union representing plaintiff. The trial court denied the motion to compel arbitration, and SSP appealed.

We affirm. The collective bargaining agreement between SSP and the union provides for arbitration of claims arising under *the agreement*, but it does not waive the right to a judicial forum for claims based on *statutes*. The trial court therefore correctly denied SSP's motion to compel arbitration.

## FACTUAL AND PROCEDURAL BACKGROUND

SSP Inc. operates food, beverage, and concessions services in airports around the country, including in California. SSP LAX, which operates out of the Los Angeles International Airport, is a subsidiary of SSP Inc. Plaintiff was employed by SSP LAX as a dishwasher beginning in August 2018.

A.     *The Collective Bargaining Agreement*

In December 2018, SSP Inc. and Unite Here Local 11, a labor union (the union), entered into a collective bargaining agreement covering "certain employees of [SSP]," including dishwashers, "at Los Angeles International Airport."[1]

---

[1]     SSP LAX is not a party to the collective bargaining agreement; nonetheless, all parties appear to agree that the claims against it are subject to the agreement. It also appears undisputed that although plaintiff did not personally sign the collective bargaining agreement, he was bound to its terms through his union.

Article 10 of the collective bargaining agreement, titled "Grievance Procedure," sets out a process for resolving disputes between employees and SSP. Paragraph 10.1 defines a "grievance" as "any claim or dispute between the Employee and the Union or between the Employer and any employee which involves interpretation, application or enforcement of this Agreement disputed between the parties." Paragraph 10.2 requires that "[a]ll grievances must be filed and processed in accordance with the following exclusive procedure"—namely:

"a.      The employee or Union that has a grievance shall discuss his Grievances with his supervisor or the Manager within fifteen days of the occurrence or of the time the Grievant should have reasonably had knowledge of the occurrence which gave rise to the grievance. The Grievant has the right to request the presence of a Union Representative at this Step One meeting. Similarly, Employer grievances must be discussed with the Union within said  fifteen days.

"b.      If the grievance is not settled in the Step One meeting, the grievance may be appealed by the employee or the Union to Step Two by filing a written grievance with the General Manager or his designated representative within ten days of the Step One meeting. Each written grievance must set forth the facts giving rise to it, any additional facts relied upon, the Section or Sections of the Agreement alleged to have been violated and the remedy or correction desired. Within five days after the filing of the written grievance, the General Manager or his designated representative will meet with the Union in an attempt to settle the grievance. The Company shall submit a written response to the grievance within ten days of the Step Two meeting . . . ."

Paragraph 10.3 provides that if the grievance is not resolved through the Step Two meeting, "it may be submitted . . . for non-binding mediation.  Both parties must agree in writing in order for a grievance to be so mediated."

Article 11 of the collective bargaining agreement is titled "Arbitration."  In relevant part, it provides as follows:

"11.1    In the event the Union or the Employer desires to pursue or grieve to arbitration, they shall so notify the other party in writing within fifteen days from receipt of the written response after the Step Two meeting, or, in the event of mediation pursuant to Section 10.3, within fifteen days after the mediation hearing.

"11.2    If the grievance is not settled on the basis of the foregoing procedures, the Union or the Employer may submit the issue, in writing, to final and binding arbitration.  Whichever party filed the grievance shall then have seven (7) days from the date of the letter of intent to arbitrate, to request a panel of arbitrators . . . .

"11.3    Before submission of the grievance to the arbitrator, the parties shall set forth in writing specifically the issue or issues to be submitted to arbitration and the arbitrator shall confine his decision to such stipulation of issue or issues.  If the stipulation of issue or issues has not been arrived at by the parties at the time the arbitrator is present to hear the case, the original grievance and the written decision and appeals submitted during the processing of the grievance shall be used and considered as the subject matter for the issues of the case. . . . [¶] . . . [¶]

"11.8    Arbitrators shall have no authority to amend, alter, add to or subtract from the terms of the Agreement.

4

"11.9 All arbitration decisions shall be final and binding on the parties."

B. *The Present Action*

Plaintiff, individually and on behalf of a putative class,[2] filed the present action against SSP on March 13, 2019. Plaintiff asserted eight causes of action: (1) failure to pay minimum wages (Lab. Code,[3] §§ 1194, 1197); (2) failure to pay overtime wages (§§ 510, 1198); (3) failure to provide meal breaks (§§ 226.7, 512); (4) failure to permit rest breaks (§ 226.7); (5) failure to reimburse business expenses (§§ 2800, 2802); (6) failure to provide accurate itemized wage statements (§ 226); (7) failure to pay all wages due upon separation of employment (§§ 201–203); and (8) unlawful business practices (Bus. & Prof. Code, §§ 17200 et seq.).

SSP removed the action to federal court, asserting that federal jurisdiction existed under the federal Labor Management Relations Act (LMRA) (29 U.S.C. §§ 151 et seq.) because resolving the dispute would require interpreting the collective bargaining agreement. The district court disagreed and remanded the case to state court. It explained that while the LMRA gives federal courts exclusive jurisdiction of suits "for violation of *contracts* between an employer and a labor organization" (29 U.S.C. § 185, subd. (a), italics added), none of plaintiff's claims alleged a

---

[2] The putative class was defined as "[a]ll California citizens currently or formerly employed by [SSP] as non-exempt employees in the State of California within four years prior to the filing of this action to the date the class is certified."

[3] All subsequent undesignated statutory references are to the Labor Code.

5

violation of a labor contract.  Moreover, the court said, the collective bargaining agreement's language did not contain a " 'clear and unmistakable' waiver" of the employees' rights to pursue their claims in a judicial forum.  It explained:  "The CBA makes clear that its grievance and arbitration procedures apply only to claims that involve 'interpretation, application or enforcement of th[e] [CBA].'  (CBA, art. 10.1.)  Plaintiff's claims, brought specifically under state law, involve neither."  The court thus concluded that it did not have subject matter jurisdiction over plaintiff's claims.  (*Wilson-Davis v. SSP America, Inc.* (C.D. Cal. 2020) 434 F.Supp.3d 806, 810, 818.)

Following remand, plaintiff filed a first amended complaint. The amended complaint repeated the allegations from the original complaint and added a new cause of action for enforcement of the Private Attorney General Act (PAGA) (§§ 2698 et seq.).

C.     *Motion to Compel Arbitration*

On March 13, 2020, SSP filed a motion to compel arbitration of plaintiff's claims.  SSP urged:  (1) the Federal Arbitration Act (FAA) governed plaintiff's claims; (2) whether plaintiff's claims were subject to arbitration was to be decided by an arbitrator, not the court; and (3) the collective bargaining agreement contained a clear and unmistakable agreement to arbitrate plaintiff's individual claims.  Defendants thus asked the court to compel plaintiff to arbitrate his individual claims, and to stay any further judicial proceedings pending the outcome of the arbitration.

Plaintiff opposed the motion.  He appeared to concede that the FAA governed the arbitration agreement, but urged that (1) the parties did not delegate the issue of arbitrability to the

6

arbitrator, and (2) the collective bargaining agreement did not require arbitration of claims, like plaintiff's, that alleged violations of California law, rather than of the collective bargaining agreement.  Plaintiff thus urged that none of his claims was subject to arbitration.

The trial court denied the motion to compel arbitration. The court explained that the collective bargaining agreement did not contain a " 'clear and unmistakable' waiver" of the rights to have either arbitrability or plaintiff's substantive claims decided by a court.  Thus, it concluded, "there exists no agreement to arbitrate the statutory claims at issue in this case."

Defendants timely appealed from the order denying the petition to compel arbitration.[4]

## DISCUSSION

When a dispute arises between parties to an arbitration agreement, the parties may disagree about two issues that must be addressed prior to resolving the merits of the dispute.  First, parties may disagree about "the threshold arbitrability question—that is, whether their arbitration agreement applies to the particular dispute." (*Henry Schein, Inc. v. Archer and White Sales, Inc.* (2019) __ U.S. __ [139 S.Ct. 524, 527] (*Schein*); *Sandoval-Ryan v. Oleander Holdings LLC* (2020) 58 Cal.App.5th 217, 223 (*Sandoval-Ryan*).)  Second, parties may disagree about *who*—the court or the arbitrator—has the power to decide whether the dispute is arbitrable.  (See *First Options of Chicago v. Kaplan* (1995) 514 U.S. 938 (*First Options*).)

---

[4]     An order denying a petition to compel arbitration is an appealable order.  (Code Civ. Proc., § 1294, subd. (a).)

7

Both questions are before us in the present case. First, SSP contends that the trial court erred in deciding the question of arbitrability because the collective bargaining agreement delegated resolution of that issue to the arbitrator. Second, SSP urges that even if the trial court had the power to decide arbitrability, it erred in concluding that plaintiff's claims were not arbitrable under the plain language of the collective bargaining agreement.

Because the basic facts underlying SSP's motion to compel arbitration are undisputed, this appeal presents a purely legal issue, which we review de novo. (*Moritz v. Universal City Studios LLC* (2020) 54 Cal.App.5th 238, 245; see also *Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425 [if court's denial of motion to compel arbitration rests solely on a decision of law, "then a de novo standard of review is employed"].)

## I.

### The Trial Court Correctly Concluded That Under the Terms of the Collective Bargaining Agreement, Arbitrability Was a Question for the Court, Not the Arbitrator

*A.      Governing Principles*[5]

Courts presume that the parties intend courts, not arbitrators, to decide threshold issues of arbitrability. (*Sandoval-Ryan, supra*, 58 Cal.App.5th at p. 223; *Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 891 (*Aanderud*).) Thus, the

---

[5]      SSP asserts, and plaintiff does not dispute, that the Federal Arbitration Act (FAA) governs the arbitration agreement at issue. For purposes of this appeal, therefore, we will assume without deciding that the FAA applies.

" 'gateway' " question of arbitrability—whether a collective-bargaining agreement requires the parties to arbitrate the particular grievance—" 'is an issue *for judicial determination* [u]nless the parties *clearly and unmistakably* provide otherwise.' " (*Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 83; see also *Schein, supra*, 139 S.Ct. at p. 530 [court will decide threshold issue of arbitrability unless agreement delegates question to arbitrator by " 'clear and unmistakable' evidence"]; *Granite Rock Co. v. Teamsters* (2010) 561 U.S. 287, 296 (*Granite Rock*) ["It is well settled . . . that whether parties have agreed to 'submi[t] a particular dispute to arbitration' is typically an ' "issue for judicial determination" ' "]; *Sandoval-Ryan*, at p. 223 [to be effective, clause delegating issue of arbitrability to arbitrator must be "clear and unmistakable"].)

Although SSP concedes that a court is required to determine arbitrability unless an agreement "clearly and unmistakably" delegates that question to an arbitrator, it urges, citing the Ninth Circuit's decision in *United Bhd. of Carpenters & Joiners of Am., Local No. 1780 v. Desert Palace, Inc.* (9th Cir. 1996) 94 F.3d 1308, 1311 (*Desert Palace*), that a clear delegation is present if a collective bargaining agreement contains a "broad arbitration clause," whether or not the agreement "specifically mention[s] who decides arbitrability." As we discuss, the law is to the contrary.

The United States Supreme Court first discussed the delegation issue in *First Options*, *supra*, 514 U.S. at pp. 944–945. There, the court held that where an arbitration agreement is "silen[t]" or "ambigu[ous]" on "the 'who should decide arbitrability' point," a "*judge*, not an arbitrator," must resolve the question. (*Id.* at pp. 945–946, italics added.) The court

9

explained: "[T]he 'who (primarily) should decide arbitrability' question . . . is rather arcane. A party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers. [Citation.] And, given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." (*Id.* at p. 945.) Accordingly, the high court said, "[c]ourts should not assume that parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." (*Id.* at p. 944.) Applying the "clear and unmistakable" standard, the court said that because the arbitration agreement before it was silent on the question of who should decide arbitrability, the issue "was subject to independent review by the courts." (*Id.* at p. 947.)

The following year, in *Desert Palace*, *supra*, 94 F.3d 1308, a panel of the Ninth Circuit acknowledged *First Options*, but concluded that its holding was limited to commercial arbitration agreements. *Desert Palace* therefore held that in the context of a collective bargaining agreement, "a broad arbitration clause— even one that does not specifically mention *who* decides arbitrability—is sufficient to grant the arbitrator authority to decide his or her own jurisdiction." (*Id.* at p. 1311.) In the case before it, *Desert Palace* concluded that because the broad arbitration clause in the collective bargaining agreement "does not exclude arbitrability or jurisdictional disputes from the arbitration process, . . . the district court was correct in requiring

10

the arbitrator, in the first instance, to decide the question of arbitrability." (*Id.* at p. 1310.)

Nearly 15 years after *Desert Palace*, the Supreme Court considered arbitrability in the context of a collective bargaining agreement in *Granite Rock*, *supra,* 561 U.S. at p. 291. There, the court described the law as "well settled *in both commercial and labor cases* that whether parties have agreed to 'submi[t] a particular dispute to arbitration' is typically an ' "issue for judicial determination," ' " and it thus said that the union had "overread[]" its precedents in suggesting that different rules applied to labor and commercial arbitration agreements. (*Id.* at pp. 296, 299, italics added. The court concluded: "Our cases invoking the federal 'policy favoring arbitration' of commercial and labor disputes apply the same framework. They recognize that, *except where 'the parties clearly and unmistakably provide otherwise,'* [citation], it is 'the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning' a particular matter." (*Id.* at p. 301, italics added.)

Recently, in *SEIU Local 121RN v. Los Robles Reg'l Med. Ctr.* (9th Cir. 2020) 976 F.3d 849 (*SEIU*), the Ninth Circuit held that the distinction drawn in *Desert Palace* between labor and commercial arbitration agreements was inconsistent with *Granite Rock*, and thus that *Desert Palace* was no longer good law.[6] The *SEIU* court reasoned that *Granite Rock* "expressly

---

[6] *SEIU* is not cited in SSP's opening brief. Plaintiff noted the omission in his respondent's brief and urged that *Desert Palace* was no longer good law. In reply, SSP cited *SEIU*, but did not acknowledge its conclusion that *Desert Palace* had been abrogated.

rejected the notion that labor arbitration disputes should be analyzed differently than commercial arbitration disputes." (*SEIU*, at p. 851, citing *Granite Rock*, *supra*, 561 U.S. at pp. 300–301.)  Thus, *SEIU* concluded, "the Supreme Court's reasoning in *Granite Rock* is clearly irreconcilable with *Desert Palace*, and thus *Desert Palace* has been abrogated."  (*SEIU*, at p. 861.)  The court then considered whether, in the case at issue, there was " 'clear and unmistakable' " evidence that the parties to the collective bargaining agreement had agreed to arbitrate arbitrability.  The court noted that the agreement's arbitration provision tasked the arbitrator with resolving "any 'dispute or disagreement involving the interpretation, application or compliance with specific provisions of [the CBA],' " but was "otherwise silent as to the arbitrator's authority to determine its own jurisdiction."  Under these circumstances, the court said, "*the district court* is responsible for determining whether the grievance filed by SEIU is arbitrable."  (*SEIU*, at p. 861, italics added.)

We agree with *SEIU* that *Desert Palace* is no longer good law, and that under *First Options* and *Granite Rock*, arbitrability must be decided by a court unless an arbitration provision explicitly provides otherwise.  We turn now to that question.

  B. *The Collective Bargaining Agreement Does Not Clearly and Unmistakably Delegate the Question of Arbitrability to an Arbitrator*

SSP contends that the collective bargaining agreement includes a "clear and unmistakable" delegation of threshold arbitrability questions to the arbitrator, urging that "Article 10 of the CBA requires a grievance procedure for 'any claim or dispute between . . . the Employer and any employee which involves

12

interpretation, application or enforcement of this [CBA],' and dictates that 'all grievances must be filed and processed in accordance with' the CBA's mandatory grievance and arbitration procedures." But having closely examined both Article 10, which governs grievances, and Article 11, which governs arbitration, we find no explicit delegation of the question of arbitrability to an arbitrator.

SSP is correct that paragraph 10.1 broadly defines "grievance" as "any claim or dispute between the Employer and the Union or between the Employer and any employee which involves interpretation, application or enforcement of this Agreement." But paragraph 10.1 is definitional, not directive: While it defines "grievance," it does not prescribe a method for resolving the disputes thus defined.

Paragraphs 10.2 through 10.5 set forth an "exclusive procedure" for resolving grievances, but that procedure does not include arbitration. Instead, paragraphs 10.2 through 10.5 prescribe the following three-step process: (1) a discussion between the employee and his or her manager (Step One); (2) the submission of written grievance and response, followed by a meeting between the General Manager and a union representative (Step Two); and (3) optional non-binding mediation. Arbitration is not described in paragraphs 10.2 through 10.5 as a step in the grievance process—indeed, those paragraphs do not reference arbitration at all.[7]

---

[7] The word "arbitration" appears only once in Article 10, in a sentence directing that employees "awaiting the outcome of a grievance or arbitration are to continue to follow the rules and instruction of the Employer in the interim."

Article 11 sets out an arbitration procedure, but it neither mandates arbitration nor delegates the question of arbitrability to an arbitrator. Significantly, paragraph 11.2 provides that the union or SSP "*may*" submit unresolved grievances to arbitration, but it nowhere suggests that unresolved grievances "*must*" be submitted to arbitration. (See ¶ 11.2 ["If the grievance is not settled on the basis of the foregoing procedures, the Union or the Employer *may* submit the issue, in writing, to final and binding arbitration"], italics added.) Moreover, nothing in Article 11 suggests that the arbitrator has exclusive province over questions of arbitrability. To the contrary, the sole provision in Article 11 that addresses the scope of the arbitrator's powers leaves it to the parties to define the arbitrator's authority. (¶ 11.3 [the arbitrator "shall confine his decision" to only those issues the parties agree "in writing specifically . . . to be submitted to arbitration"].)[8]

In short, we find nothing in Articles 10 or 11 that delegates the question of arbitrability to an arbitrator. Instead, these provisions appear to make arbitration permissive, not mandatory, and to limit the arbitrator's powers to only those issues the parties have specifically agreed in writing to arbitrate.

---

[8]     In full, paragraph 11.3 provides: "Before submission of the grievance to the arbitrator, the parties shall set forth in writing specifically the issue or issues to be submitted to arbitration and the arbitrator shall confine his decision to such stipulation of issue or issues. If the stipulation of issue or issues has not been arrived at by the parties at the time the arbitrator is present to hear the case, the original grievance and the written decision and appeals submitted during the processing of the grievance shall be used and considered as the subject matter for the issues of the case."

None of the cases on which SSP relies suggests a different result. As relevant here, in each of the cited cases, the arbitration agreements expressly delegated to the arbitrator the authority to resolve disputes concerning the agreements' enforceability or applicability. For example, in *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, 68 (*Rent-A-Center*), the arbitration agreement stated that " '[t]he Arbitrator . . . *shall have exclusive authority* to resolve any dispute relating to the . . . enforceability . . . of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable.' " (Italics added.) Similarly, in *Aanderud*, *supra*, 13 Cal.App.5th at p. 892, the arbitration agreement provided that the parties " '*agree to arbitrate* all disputes, claims and controversies arising out of or relating to . . . (iv) the interpretation, validity, or enforceability of this Agreement, *including the determination of the scope or applicability of this Section 5* [*the "Arbitration of Disputes" section*]. . . .' " (Italics added.) And, in *Mohamed v. Uber Technologies, Inc.* (9th Cir. 2016) 848 F.3d 1201, 1207–1208 (*Mohamed*), the arbitration agreement provided that disputes subject to arbitration "include without limitation disputes *arising out of or relating to interpretation or application of this Arbitration Provision*, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision." (Italics added; see also *Southern California Dist. Council of Laborers v. Berry Const., Inc.* (9th Cir. 1993) 984 F.2d 340, 341 [arbitration of dispute mandated under collective bargaining agreement providing that " 'all grievances or disputes arising between [the parties] over the interpretation or application of the terms of this Agreement *shall be settled by* [arbitration],' " italics

15

added].)  Under these circumstances, the courts held that the gateway questions of arbitrability had been delegated to the arbitrators under the express language of the arbitration agreements.  (*Rent-A-Center*, at pp. 65, 68; *Aanderud*, at p. 892; *Mohamed*, at p. 1209.)[9]

The present case is distinguishable.  As we have said, the collective bargaining agreement in the present case, unlike those in *Rent-A-Center*, *Aanderud*, and *Mohamed*, does not specifically delegate to an arbitrator the power to decide the agreement's enforceability or applicability.  To the contrary, the collective bargaining agreement here specifically limits the arbitrator's jurisdiction to only those issues the parties agree "in writing specifically . . . to be submitted to arbitration."  As such, the trial court correctly concluded that this is not a case in which the parties "clearly and unmistakably" delegated the threshold issue of arbitrability to an arbitrator, and thus the arbitrability question is "subject to independent review by the courts."  (*First Options*, *supra*, 514 U.S. at p. 947.)

---

[9]     *United Steelworkers of America v. Enterprise Wheel & Car Corp.* (1960) 363 U.S. 593 (*United Steelworkers*), cited by defendants for the proposition that "broad arbitration clauses confer exclusive authority on the arbitrator to decide his or her jurisdiction," does not support it.  *United Steelworkers* was an appeal of an order enforcing an arbitration award, not an appeal of an order granting a motion to compel arbitration, and thus the question of arbitrability was not before the court.

## II.
## The Trial Court Correctly Concluded that
## Plaintiff's Claims Are Not Subject to Arbitration

*A.    Governing Principles*

"On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists."  (Code Civ. Proc., § 1281.2.)

The Supreme Court has held that where a collective bargaining agreement contains an arbitration clause, courts will presume that the parties intended to arbitrate claims arising under the agreement *itself*.  (*Wright v. Universal Maritime Service Corp.* (1998) 525 U.S. 70, 78 (*Wright*).)  That presumption does not apply, however, where a dispute "concerns not the application or interpretation of any CBA, but the meaning of *a . . . statute*."  (*Id.* at pp. 78–79.)  In that case, "[n]ot only is [a plaintiff's] statutory claim not subject to a presumption of arbitrability; we think any CBA requirement to arbitrate it must be particularly clear."  (*Id.* at p. 79.)  In order for a waiver of the employees' rights to a judicial forum to be valid, therefore, a collective bargaining agreement must "contain a *clear and unmistakable waiver* of the covered employees' rights to a judicial forum" relating to the statutory claims alleged in the complaint.  (*Id.* at p. 82, italics added; see also *Darrington v. Milton Hershey School* (3d Cir. 2020) 958 F.3d 188, 191 ["A collective bargaining agreement can waive a judicial forum for union members' statutory claims only if the waiver is clear and unmistakable"];

17

*Lawrence v. Sol G. Atlas Realty Co., Inc*. (2d Cir. 2016) 841 F.3d 81, 82 ["Collectively bargained agreements to arbitrate statutory discrimination claims must be 'clear and unmistakable' "].)**10**

SSP acknowledges the holding of *Wright* and its progeny, but urges that the "clear and unmistakable" standard does not apply to *all* statutory claims, but only to statutory discrimination claims like those at issue in *Wright*. Cases applying *Wright* consistently have concluded to the contrary, applying the "clear and unmistakable" standard to a variety of statutory claims, including to those arising under California's wage and hour laws. (E.g., *Vasserman v. Henry Mayo Newhall Memorial Hospital* (2017) 8 Cal.App.5th 236, 246 (*Vasserman*) [applying "clear and unmistakable" standard to alleged waiver of union members' right to pursue California wage-and-hour claims in a judicial forum]; *Cortez v. Doty Bros. Equipment Co.* (2017) 15 Cal.App.5th 1, 11–12 [same]; see also *O'Brien v. Town of Agawam* (1st Cir. 2003) 350 F.3d 279, 285 [applying "clear and unmistakable" standard to dispute arising under federal Fair Labor Standards Act]; *Vega v. New Forest Home Cemetery, LLC* (7th Cir. 2017) 856 F.3d 1130, 1134 [same].) Accordingly, we will compel plaintiff to arbitrate his claims only if the collective bargaining agreement in the present case contains a "clear and unmistakable" waiver of the right to pursue statutory wage and hour claims in a judicial forum.

---

**10**    *Shearson/American Exp., Inc. v. McMahon* (1987) 482 U.S. 220, 226–227 (*Shearson*) does not suggest to the contrary. The issue in that case was whether Congress intended the Securities Exchange Act or RICO to bar enforcement of all predispute arbitration agreements, *not* whether the "clear and unmistakable" standard applied to such agreements.

B.    *The Collective Bargaining Agreement Does Not Contain a "Clear and Unmistakable" Waiver of Plaintiff's Right to Litigate His Statutory Wage and Hour Claims in a Judicial Forum*

"In determining whether there has been a sufficiently explicit waiver, the courts look to the generality of the arbitration clause, explicit incorporation of statutory . . . requirements, and the inclusion of specific [statutes].  The test is whether a collective bargaining agreement makes compliance with the statute a contractual commitment subject to the arbitration clause.  (*Wright, supra*, 525 U.S. at pp. 80–81 [119 S.Ct. at pp. 396–397]; see *Austin v. Owens-Brockway Glass Container, Inc.* (4th Cir. 1996) 78 F.3d 875, 879–880.)"  (*Vasquez v. Superior Court* (2000) 80 Cal.App.4th 430, 434–435 (*Vasquez*).)

" 'Broad, general language is not sufficient to meet the level of clarity required to effect a waiver in a [collective bargaining agreement].  In the collective bargaining context, the parties "must be particularly clear" about their intent to arbitrate statutory . . . claims.' (*Carson v. Giant Food, Inc.* (4th Cir. 1999) 175 F.3d 325, 331.)  A waiver in a collective bargaining agreement is sufficiently clear if it is found in an explicit arbitration clause.  'Under this approach, the [collective bargaining agreement] must contain a clear and unmistakable provision under which the employees agree to submit to arbitration all [state and federal statutory] causes of action arising out of their employment.' (*Carson*, at p. 331.)" (*Vasquez, supra*, 80 Cal.App.4th at pp. 435–436, fn. omitted.)

For at least two separate reasons, we conclude that the collective bargaining agreement's arbitration provision does not

contain a clear and unmistakable agreement to submit statutory causes of action to arbitration.

First, nothing in the plain language of Articles 10 and 11 mandates arbitration of grievances. As we have said, Article 10 contains no reference to arbitration, and while Article 11 provides that the union or SSP "may" submit unresolved grievances to arbitration, it nowhere suggests that unresolved grievances "must" be arbitrated. Nor is there any language in Article 10 or Article 11 that either waives the right to a judicial forum to resolve grievances nor identifies arbitration as the exclusive means by which grievances may be resolved. As such, we find no "clear and unmistakable" waiver of the right to litigate grievances in a judicial forum.

Second, even were we to conclude that Article 11 required the submission of *some* employee claims to arbitration, we could not find that it requires arbitration of the claims alleged in this case. By its plain language, Articles 10 and 11 apply only to "grievances"—i.e., to "claim[s] or dispute[s] between the Employer and the Union or between the Employer and any employee *which involve[] interpretation, application or enforcement of this Agreement disputed between the parties*." (Italics added.) Plaintiff's first amended complaint, however, does not allege any violations of "this Agreement"—i.e., of the collective bargaining agreement itself. Instead, it alleges only violations of the Labor Code and other statutes—specifically,

20

sections 1194[11] and 1197[12] (minimum wages), section 510[13] (overtime pay), section 512[14] (meal periods), section 226.7[15] (rest

[11]     "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."  (§ 1194, subd. (a).)

[12]     "The minimum wage for employees fixed by the commission or by any applicable state or local law, is the minimum wage to be paid to employees, and the payment of a lower wage than the minimum so fixed is unlawful.  This section does not change the applicability of local minimum wage laws to any entity."  (§ 1197.)

[13]     "Eight hours of labor constitutes a day's work.  Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee.  Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.  In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee."  (§ 510, subd. (a).)

[14]     "An employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes . . . ."  (§ 512, subd. (a).)

[15]     "An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an

breaks), section 2802[16] (reimbursement of business expenses), section 226[17] (duty to provide itemized wage statements), and section 201[18] (duty to pay all wages upon separation of employment).  As such, plaintiff's claims do not involve the "interpretation, application, or enforcement of" the collective bargaining agreement, and thus they are not within the plain language of Articles 10 and 11.

SSP acknowledges that plaintiff asserts exclusively statutory violations, but it asserts that plaintiff's claims necessarily require application and enforcement of the collective bargaining agreement because "each of [plaintiff's] specific causes

applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health."  (§ 226.7, subd. (b).)

[16]    "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful."  (§ 2802, subd. (a).)

[17]    "An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing . . . ."  (§ 226, subd. (a).)

[18]    "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."  (§ 201, subd. (a).)

of action are governed by separately delineated sections of the CBA, thus putting them within the ambit of the arbitration provision." Not so. Although there plainly is overlap between the subjects covered by the Labor Code and the collective bargaining agreement, none of the portions of the collective bargaining agreement to which SSP directs our attention (Article 5 ["Hours of Work and Overtime"], Article 14 ["Uniforms"], and Schedule A ["Minimum Classification scales"]) specifically incorporates any of the statutory provisions on which plaintiff's causes of action are based. Thus, the collective bargaining agreement cannot be read to constitute a clear and unmistakable waiver of a judicial forum for alleged violations of statutory rights. (See *Choate v. Celite Corp.* (2013) 215 Cal.App.4th 1460, 1467 ["discussing a topic while at the same time saying nothing about the statutory right at issue does not affect a clear and unmistakable waiver of that right"]; *Vasserman, supra,* 8 Cal.App.5th at p. 248 [if collective bargaining agreement "mirror[s]" statutory requirement but does not cite a statute, agreement "cannot be read to constitute a clear and unmistakable waiver of a judicial forum for statutory rights"]; compare *Cortez v. Doty Bros. Equipment Co., supra,* 15 Cal.App.5th 1 [finding "explicit and unmistakable agreement" to arbitrate where collective bargaining agreement stated that " '[a]ny dispute or grievance *arising from this Wage Order 16[]* shall be processed under and in accordance with' " arbitration procedure outlined in collective bargaining agreement], italics added.)[19]

---

[19]    In its reply brief, SSP cites *Gray v. Petrossian, Inc.* (C.D.Cal., Nov. 20, 2017, No. CV 17-6870-PSG (PJWx)) 2017 WL 8792671, for the proposition that "courts have already held that a

23

Further, notwithstanding some partial overlap between the subjects covered by the Labor Code and the collective bargaining agreement, the Labor Code and the agreement set out distinct substantive requirements. For example, as of July 1, 2019, the minimum wage for employees of large businesses in Los Angeles County was $14.25 per hour (<https://lacounty.gov/minimum-wage/> [as of March 11, 2021] archived at <https://perma.cc/XMG9-TDA2>), but the bargained-for wage for dishwashers under the collective bargaining agreement was $15.75 per hour. Similarly, a "day's work" under the Labor Code is eight hours (§ 510, subd. (a)), while a "day's work" under the terms of the collective bargaining agreement is "seven and one-half hours within eight hours." And, an employee is entitled to twice the regular rate of pay for any work in excess of 12 hours under the Labor Code (§ 510, subd. (a)), but is entitled to such pay for any work in excess of eleven and one-half hours under the collective bargaining agreement.

In short, while the collective bargaining agreement covers some of the matters also addressed in the Labor Code, it does not simply incorporate the Labor Code's provisions. Adjudicating

substantively similar CBA containing an identical arbitration provision evidenced a clear and unmistakable waiver of the right to pursue claims in court." While SSP correctly characterizes *Gray*'s holding, we are not bound it, nor do we find it persuasive. (*Caliber Paving Co., Inc. v. Rexford Industrial Realty & Management, Inc.* (2020) 54 Cal.App.5th 175, 186–187 [Court of Appeal "not bound by . . . any . . . decision of the federal district courts and circuit courts of appeals"]; *Southern California Pizza Co., LLC v. Certain Underwriters at Lloyd's, London etc.* (2019) 40 Cal.App.5th 140, 151 ["[w]e are not bound by . . . federal decisions"].)

plaintiff's claims, therefore, will not require a court to "interpret[]," "appl[y]," or "enforce[]" the collective bargaining agreement.[20]

---

[20] Because we so conclude, we need not address SSP's contention that any of plaintiff's claims should be stayed pending arbitration.

25

**DISPOSITION**

The order denying the petition to compel arbitration is affirmed.  Plaintiff is awarded his appellate costs.


EDMON, P. J.


We concur:



LAVIN, J.




EGERTON, J.

Filed 4/9/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TRAMON WILSON-DAVIS, | B306781 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 19STCV08579) |
| v. | |
| SSP AMERICA, INC. et al., | ORDER CERTIFYING OPINION FOR PUBLICATION [NO CHANGE IN JUDGMENT] |
| Defendants and Appellants. | |

THE COURT:

The opinion in the above-referenced matter filed March 11, 2021, was not certified for publication in the Official Reports. For good cause shown it now appears that the opinion should be published in the Official Reports.

[There is no change in the judgment.]

_____

EDMON, P.J.          LAVIN, J.          EGERTON, J.